```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

FLORENCE MENDEZ,

            Plaintiff,

vs.                                        Case No. 2:12-cv-158-FtM-29SPC

LAND INVESTORS, CORP., a Florida
Corporation,

            Defendant.
_____

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment as to Count One of Plaintiff's Complaint and Supporting Memorandum of Law (Doc. #22) filed on January 11, 2013. Defendant filed a response in opposition on February 11, 2013. (Doc. #33.) With leave of Court (Doc. #37), plaintiff filed a reply brief in support of its motion (Doc. #48) to which defendant filed a sur-reply (Doc. #50). For the reasons set forth below, the motion for partial summary judgment is denied.

**I.**

The following facts are undisputed and taken in the light most favorable to the non-moving party, defendant:

The Port Charlotte Subdivision is a series of platted plots located in Charlotte County, Florida. It was originally developed in 1959 by General Development Corporation and consisted of approximately 113,000 platted plots. From March, 2008, through October, 2012, defendant Land Investors Corporation (Land Investors

or defendant) acquired certain lots within the Port Charlotte Subdivision which it sold to various investors. Land Investors has acquired and sold lots "piecemeal" over time.

Plaintiff is a French citizen and has never been to the United States. In or about March 2009, she responded to an advertisement placed in the telephone directory by Guy Zimmer (Zimmer), Armand Aznavourian (Aznavourian), and Charles Astouric (Astouric). Guy Zimmer and Armand Aznavourian were agents for defendant.[1] On or about March 16, 2009, Zimmer informed plaintiff of the opportunity to purchase plots of land located in Charlotte County, Florida as an investment. Plaintiff paid a deposit to reserve five (5) lots. On or about March 17, 2009, plaintiff executed five contracts for the purchase of the five (5) lots in the Port Charlotte Subdivision. On or about April 15, 2009, plaintiff entered into another contract for the purchase of five additional lots in the Port Charlotte Subdivision. Plaintiff has paid all monies due under the contract, and in or about May and June 2009, plaintiff obtained title to the ten (10) lots by warranty deed. The properties have lost substantial value and, as a result, plaintiff has filed a four (4) count Complaint against defendant asserting violation of the Interstate Land Sales Full Disclosure Act (ILSFDA) (Count I), and state law claims for fraudulent misrepresentation

---

[1] Charles Astouric is never specifically identified as an agent or independent broker.

(Count II), negligent misrepresentation (Count III), and false information negligently supplied for the guidance of others (Count IV).

As to the subject motion, plaintiff seeks summary judgment with respect to Count I. Count One asserts that defendant violated the ILSFDA by failing to provide a printed property report as required by Section 1703(a)(1)(B). It further asserts that defendant violated the statute by failing to notify Mendez of her statutory two-year right to revoke the contract under § 1703(c). Plaintiff asserts that the ILSFDA applied to the transactions and defendant did not provide the requisite disclosures under the statute. Further, Mendez asserts that defendant's affirmative defenses that Count I is time barred and the transaction is otherwise exempt from ISLFDA are without merit. Defendant argues to the contrary.

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 840 (11th Cir. 2000). In order to avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

In ruling on a motion for summary judgment, the Court is required to consider the evidence in the light most favorable to the nonmoving party. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000); Jaques v. Kendrick, 43 F.3d 628, 630 (11th Cir. 1995). The Court does not weigh conflicting evidence or make credibility determinations. Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d at 1225. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Tullius v. Albright, 240

F.3d 1317, 1320 (11th Cir. 2001)(citing Clemons v. Dougherty Cnty., 684 F.2d 1365, 1369 (11th Cir. 1982)).  However, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003).  A genuine issue of material fact exists only if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.  Id.

**III.**

The ILSFDA is a remedial statute intended to protect consumers from unscrupulous sales of undeveloped home sites.  Kamel v. Kenco/The Oaks at Boca Raton LP, 321 Fed. App'x 807, 809 (11th Cir. 2008) (quoting Winter v. Hollingsworth Props., Inc., 777 F.2d 1444, 1447 (11th Cir. 1985)).  Under the Act, developers of subdivisions must register their projects with the Secretary of Housing and Urban Development and make specified disclosures to a purchaser in advance of his or her signing of the purchase agreement.  See 15 U.S.C. §§ 1703, 1704.  In addition, the purchaser's right to these disclosures must be clearly stated in the purchase agreement.  15 U.S.C. §§ 1702(b)-(d).  The ILSFDA also includes certain anti-fraud provisions which make it unlawful for a developer to intentionally deceive purchasers.  15 U.S.C. § 1703(a)(2).

Section 1703(a)(1)(B) prohibits a "developer" from selling or leasing a lot "unless a printed property report, meeting the

requirements of section 1707 of this title, has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee." Where a property report has not been furnished to the buyer before executing the contract for sale, "such contract or agreement may be revoked at the option of the purchaser or lessee within two years from the date of such signing, and such contract or agreement shall clearly provide this right." 15 U.S.C. § 1703(c). It is undisputed in this case that defendant did not provide a property report and consequently did not notify plaintiff of her revocation right.

**A.   Applicability of the ILSFDA**

Plaintiff asserts that summary judgment is appropriate because Land Investors made use of interstate commerce with its dealings with her and defendant is a "developer". Therefore, the ILSFDA applies to the subject transactions and defendant failed to comply with the Act by failing to make the requisite disclosures. Defendant counters that there is no evidence that it used interstate commerce in its transactions and it is not a "developer" because it did not sell the lots contained in the Port Charlotte Subdivision as part of a "common promotional plan." Therefore, the ILSFDA does not apply.

**1.   Interstate Commerce**

The ILSFDA prohibits "any developer *or agent*, directly or indirectly, to make use of any means of instruments or

transportation or communication in interstate commerce or of the mails . . ." to violate the statute.  15 U.S.C. § 1703 (emphasis added).  The parties dispute whether Land Investors made use of interstate commerce.

The Court is satisfied that plaintiff has established that defendant made use of interstate commerce.  Plaintiff has provided uncontroverted evidence that she utilized the telephone and e-mail communications when communicating with defendant's agents, Zimmer and Aznavourian. (Doc. 48-1, p. 1, 48-2, p. 1.) See United States v. Harnaday, 392 F.3d 1306, 1311 (11th Cir. 2004)(The Internet, which necessarily includes email, is an "instrumentality of interstate commerce.")  Further, the affidavit of Jean-Claude Giger, the President of Land Investors, indicates that, "[t]ypically, communications between Land Investments and the brokers are made by telephone . . ." (Doc. #48-3, ¶8.) See U.S. v. Pettis, 379 Fed. App'x 864, 865 (11th Cir. 2010) citing U.S. v. Covington, 565 F.3d 1336, 1343 (11th Cir. 2009)("[A] telephone is a facility of interstate commerce, and answering the phone is "use" as that term is ordinarily defined.").  Finally, this transaction is between a Florida corporation and a citizen of France who has never traveled to the United States.  Land Investors concedes that it received all money due under the contracts.  It is easily inferred that the use of interstate commerce, whether through the mail or otherwise, occurred to transfer the monies from France to

the United States. (See United States v. Clay, 355 F.3d 1281, 1287 (11th Cir. 2004)(absent objection or contrary argument made to jury could infer gun seized in Georgia with inscription "Colt Manufacturing Company, Hartford, Ct." affected interstate commerce).

### 2. Developer

Mendez asserts that the ILSFDA is applicable because defendant is a "developer" as defined by the statute. Land Investors counters that it is not a "developer" because the lots sold were not part of a "subdivision" because they were not sold as part of a "common promotional plan."

ILSFDA defines "developer" as "any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision." 15 U.S.C. § 1701(5). An "agent" is "any person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot of lots in a subdivision . . ." 15 U.S.C. § 1701(6). A subdivision is "any land which is located in any State or in a foreign country and is divided or is proposed to be divided into lots, whether contiguous or not, for the purpose of sale or lease as part of a common promotional plan." 15 U.S.C. § 1701(3). "A common promotional plan" is presumed to exists between multiple developments where the land is "contiguous or is known, designated, or advertised as a common unit or by a common name." 15 U.S.C. §

1701(4). Regulations promulgated by the Department of Housing and Urban Development[2] (HUD) provide guidance on the concept of "common promotional plan":

> [[C]haracteristics that are evaluated in determining whether or not a common promotional plan exists include, but are not limited to: a 10% or greater common ownership; same or similar name or identity; common sales agents; common sales facilities; common advertising; and common inventory. The presence of one or more of the characteristics does not necessarily denote a common promotional plan. Conversely, the absence of a characteristic does not demonstrate that there is no common promotional plan.
>
> Two essential elements of a common promotional plan are a thread of common ownership or developers acting in concert. However, common ownership alone would not constitute a common promotional plan. HUD considers the involvement of all principals holding a 10 percent or greater interest in the subdivision to determine whether there is a thread of common ownership. If there is common ownership or if the developers are acting in concert, and there is common advertising, sales agents, or sales office, a common promotional plan is presumed to exist. . . .

24 C.F.R. § 1710, Supp. II(b).

The Court finds that there are genuine issues of material fact which preclude summary judgment with respect to whether or not the lots sold were pursuant to a "common promotional plan". The

---

[2] HUD Guidelines, available at: http://www.hud.gov/offices/hsg/ramh/ils/ilsexemp.cfm. The Guidelines state that they are intended to clarify HUD polices and positions with regard to the statutory exemptions, and that they are an interpretive rule and not a substantive regulation. 61 Fed. Reg. 13596, 13601 (1996). As an interpretive agency rule, the Guidelines are entitled to some deference. Reno v. Koray, 515 U.S. 50, 59 (1995).

parties disagree as to the manner in which defendant promoted its sales of lots within the Port Charlotte Subdivision. Therefore, the Court cannot determine at this time whether ILSFDA applied to the transactions. Summary judgment on this basis is denied.

**B. Affirmative Defenses**

Mendez also seeks summary judgment with respect to defendant's first and second affirmative defenses. Defendant's first affirmative defense asserts that defendant is exempt from the ISLFDA under the "25 lot exemption". Land Investor's second affirmative defense alleges that plaintiff's claims are time-barred. (Doc. #13, pp. 4-5.) Land Investors counters that the transactions are exempt under both the "25 lot exemption" and the "100 lot exemption".[3] In reply, Mendez asserts that neither exemption is applicable.

### 1. Exemptions from ILSFDA

Mendez asserts that neither the "25 lot exemption" nor the "100 lot exemption" are applicable because Land Investors's "common promotional plan" involved over 100 lots. Defendant argues to the contrary and asserts that on the date of the first sale to Mendez, it owned 25 lots within the Port Charlotte Subdivision, and that transaction was excluded under the "100 lot exemption." Further, on April 16, 2009, the time of the sale of the remaining five lots

---

[3]The Court notes that the "100 lot exemption" is not an enumerated affirmative defense in Land Inventors's Answer. Nonetheless, in her reply, plaintiff addresses both exemptions.

to Mendez, Land Investors owned 16 lots in the Port Charlotte Subdivision. (Doc. #33, p. 14.)

Assuming that the ISLFDA does apply, Section 1702(a) provides that the statute does not apply to "the sale or lease of lots in a subdivision containing less than twenty-five lots." 15 U.S.C. § 1702(a)(1). This exemption is a full exemption, making the ILSFDA entirely inapplicable to such sales falling under this provision. On the other hand, the "100 lot exemption", which exempts the sale of land in a subdivision containing fewer than 100 lots, is a partial exemption which exempts the developer only from the registration and disclosure requirements of the Act. 15 U.S.C. § 1703(a)(1). The developer must still comply with the anti-fraud provisions of the Act. 15 U.S.C. § 1703(a)(2); Gentry, 602 F. Supp. 2d at 1246.

The parties dispute whether the exemptions are applied to the amount of lots owned by defendant overall or whether the number of lots owned by defendant is measured from the date of sale. The time for determining whether a particular project or unit is entitled to one of the statutory exemptions of the ILSFDA is when the buyer purchases the unit. See Grove Towers, Inc. v. Lopez, 467 So. 2d 358, 361 (Fla. DCA 1985)(citations omitted)("Since the purpose of the act is to protect purchasers against fraudulent land sales schemes, it is only reasonable that the statute require full disclosure before the purchasers sign a contract."); accord Rensin

v. Juno-Loudon, LLC, No. 09-1391, 2010 WL 13815446, at *7 (E.D. Va. Mar. 30, 2010)("When determining whether or not the subdivision is one 'containing fewer than one hundred units,' the number of nonexempt lots in the subdivision should be determined contemporaneously with when the purchaser enters into the purchase agreement for the lot in the subdivision").  However, in order to invoke the exemptions of ILSFDA, the defendant must establish that its method of selling was not adopted for the sole purpose of evading the ILSFDA's protections.  Gentry v. Harborage Cottages-Stuart, LLLP, 654 F.3d 1247, 1257 (11th Cir. 2011)(A developer seeking an exemption from the ILSFDA must "produce factual evidence demonstrating that the method of disposition has a real world objective that manifests a legitimate business purpose.  The 'legitimate business purpose' standard asks the party invoking the exemption to articulate some legitimate business reason for its method of disposition other than the avoidance of the ILSFDA's consumer protections.")  Plaintiff makes no allegations that defendant's actions lack a legitimate business purpose nor does defendant attempt to make any showing of legitimacy.  Therefore, the Court is without sufficient information to determine at this time whether or not either of the exemptions apply.  Summary judgment on this basis is denied.

**2. Statute of Limitations**

The Eleventh Circuit recently held that a buyer has two years from signing a sales contract to automatically revoke a contract under Section 1703(c), but has three years in which to assert an equitable damages claim under Section 1709. <u>Gentry v. Harborage Cottages-Stuart, LLLP</u>, 654 F.3d 1247, 1261-63 (11th Cir. 2011)("Even though Plaintiffs are not entitled to the automatic statutory revocation remedies provided in 15 U.S.C. § 1703(c) because they did not attempt to revoke their contracts within two years from the date of signing the purchase contracts, they may still be entitled to the return of their deposits as equitable relief under § 1709.")  It is undisputed that plaintiff did not attempt to revoke either contract within the two-year period.

The contracts at issue are dated March 17, 2009, and April 15, 2009.  Therefore, if plaintiff seeks revocation of the contract, the complaint must have been filed no later than March 17, 2011, to revoke the first contract and April 15, 2011, to revoke the second contract.  If plaintiff seeks equitable relief under Section 1709, the complaint must have been filed no later than March 17, 2012, for the first contract and April 15, 2012, for the second contract. Count I does not seek recision under the automatic statutory right provided in 15 U.S.C. 1703(c).  Rather, Count I specifically seeks relief pursuant to 15 U.S.C. § 1709(c).  (Doc. #1, p. 8.)  Mendez filed her complaint on March 16, 2012, prior to the expiration of

the applicable statute of limitations for equitable recession under <u>Gentry</u> for both contracts.

The Court is also not persuaded by defendant's contention that plaintiff has failed to demonstrate any damages and therefore is not entitled to equitable relief under 15 U.S.C. § 1709(c). Defendant asserts that plaintiff's main complaint is that her property value declined, and because the property report did not require any information with regards to whether the purchase was a "good" investment, disclosure of the report would not have affected plaintiff's decision as to whether or not to revoke the contract. Therefore, she was not damaged by defendant's failure to provide a property report. Further, defendant asserts that because plaintiff has not provided a basis to calculate damages by failing to disclose the current fair market value of the ten lots, she cannot maintain her claim.

Defendant's argument misses the mark. Plaintiff has asserted that defendant violated ILSFDA in two ways. First, Mendez asserts that defendant failed to provide the written property report. Second, Land Investors failed to inform Mendez of her two-year right to revocation. It is true that Mendez makes no arguments that had she received a property report she would have revoked the contract. Rather, Mendez argues that if she had been notified of her statutory right to revoke, she would have done so. Mendez provided an affidavit in which she attests that before the two-year

period to revoke the contract had expired, she became concerned because the value of her land was substantially less than the value which was represented to her at the time of purchase and had she known she had a statutory right to revoke the contract, she "would have checked the dates of signature and certainly would have timely revoked the contracts within two years of signing." (Doc. #22-1, p. 4.) Thus, plaintiff has provided a material disputed fact as to whether she was damaged by defendant's failure to comply with the statute.

Plaintiff's failure to provide the current fair market value of the property does not alter the outcome. Defendant makes no allegations, and provides no evidence to support a finding, that plaintiff's land did not decrease in value. Accordingly, the Court finds that Mendez's claims for equitable relief pursuant to 15 U.S.C. § 1709 is not time-barred.

Accordingly, it is now

**ORDERED**:

Plaintiff's Motion for Partial Summary Judgment as to Count One of Plaintiff's Complaint and Supporting Memorandum of Law (Doc. #22) is **GRANTED IN PART AND DENIED IN PART:**

a. The motion is **GRANTED** to the extent that Mendez seeks partial summary judgment that defendant's second affirmative, as applied to Count I, is without merit. The equitable relief sought

in Count I pursuant to 15 U.S.C. § 1709 is not time-barred.

    b. The motion is **DENIED** in all other respects.

**DONE AND ORDERED** at Fort Myers, Florida, this __22nd__ day of March, 2013.

                                             JOHN E. STEELE
                                             United States District Judge

Copies:
Counsel of record